STATE of Tennessee, Appellee,

v.

Fred A. COOPER, Jr., Wayne A. Cooper, and Deirdre E. Cate, Appellants.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 8, 1987.

J. Polk Cooley, Patrick C. Cooley, Kingston, for Fred A. Cooper and Wayne A. Cooper.

Martha L. Cochran, Knoxville, for Deirdre E. Cate.

W.J. Michael Cody, Atty. Gen. and Reporter, Robert Conley, Asst. Atty. Gen., Nashville, Charles E. Hawk, Dist. Atty. Gen., Kingston, D. Roger Delp, Loudon, Frank A. Harvey, Asst. Dist. Attys. Gen., Lenoir City, for State.

## OPINION

JONES, Judge.

The defendants, Fred A. Cooper, Jr., Wayne A. Cooper, and Deirdre Elizabeth Cate, were convicted of the felonious possession of marijuana and cocaine with the intent to manufacture, deliver or sell, each offense being alleged in a separate count of the indictment. The trial judge found that all three defendants were standard offenders, and imposed Range I sentences. The trial judge sentenced Fred A. Cooper, Jr., and Wayne A. Cooper as follows: a fine of $3,000 and confinement in the Department of Corrections for a period of three (3) years for the felonious possession of marijuana, as alleged in Count I of the indictment, and a fine of $15,000 and confinement in the Department of Corrections for a period of five (5) years for the felonious possession of cocaine, as alleged in Count II of the indictment. These sentences were ordered to be served concurrently. The trial judge sentenced Deirdre Elizabeth Cate to pay a fine of $3,000 and serve one (1) year in the Department of Corrections for the felonious possession of marijuana, as alleged in Count I of the indictment, and to pay a fine of $7,500 and serve four (4) years in the Department of Corrections for the felonious possession of cocaine, as alleged in Count II of the indictment. These sentences were ordered to be served concurrently as well. After the trial court denied their motions for a new trial the defendants appealed as of right to this Court pursuant to Rule 3(b), Tenn.R.App.P.

In this Court the Coopers raise five issues. They contend: (a) the evidence is insufficient to sustain their respective convictions; (b) the trial judge should have dismissed the entire jury venire after a panel member made a series of prejudicial and inflammatory remarks in the presence of the entire jury venire; (c) the trial court committed error in denying their motion to suppress evidence; (d) they were denied their right to discovery when the trial court refused to order the State of Tennessee to permit the defendants to inspect, copy and/or hear certain tape recordings made by the agents during alleged drug buys at

the home of the defendants; and (e) the trial court committed error in overruling their objection to the testimony of the toxicologist regarding the "usual purity" of the cocaine sent to the laboratory for testing.

The defendant, Deirdre Elizabeth Cate, raises three basic issues in this Court. She contends: (a) the evidence is insufficient to sustain her conviction; (b) the trial court committed error in denying her motions for judgment of acquittal made at the conclusion of the State's proof as well as at the conclusion of all the proof; and (c) the assistant district attorney general committed error during summation when he misstated the facts concerning the seizure of paraphernalia used in connection with the ingestion of cocaine.

### THE SUFFICIENCY OF THE EVIDENCE

In August of 1985 agents of the Tennessee Bureau of Investigation commenced an investigation into drug trafficking in Roane County. The investigation centered upon Fred A. Cooper, Jr. and his son, Wayne A. Cooper.

On four or five occasions the agents sent someone to the Coopers' house trailer to purchase marijuana. On each occasion the person visiting the trailer was "wired" for sound and discussed the purchase of marijuana with someone at the trailer. A female voice was neither heard nor recorded on any of the visits. The name of a female, more particularly, Ms. Cate, never surfaced during the course of the investigation.

On the evening of December 30, 1986, T.B.I. Agent Lewis obtained a search warrant authorizing Lewis and other law enforcement officers to search the Coopers' house trailer, out-buildings situated on the premises, and vehicles parked on the premises. The warrant was executed the following morning at approximately 8:00 a.m.

The Coopers' house trailer contained two bedrooms. The bedrooms were separated by a bathroom. Wayne A Cooper occupied the front bedroom. Fred A. Cooper, Jr. occupied the back bedroom. When the officers arrived to execute the search warrant, they were met at the front door by the Coopers. Ms. Cate, who was apparently still asleep, was found lying on a bed in the back bedroom. A child, approximately four years of age, was also found in the trailer. While the record does not reveal the identity of the child's parents, we glean from the record Ms. Cate is the child's mother.

A search of the premises revealed 5.80 grams of cocaine. Officers found 2.9 grams of cocaine on a shelf in the closet of the front bedroom. An additional 2.85 grams of cocaine was found in Fred A. Cooper's leather coat, which was hanging near the back door of the trailer. The officers also seized 24.11 pounds of marijuana. The bulk of the marijuana was found in the back bedroom. However, marijuana was also found in the front bedroom, the dining room, and a chicken house. In excess of $8,000 was seized from the Coopers. Fred A. Cooper, Jr. was found in possession of $4,423 and Wayne A. Cooper was found in possession of $4,023.

Both men's and women's clothing were found in the back bedroom. The women's clothing consisted of a "couple of blouses" that were "hanging on the door of the bedroom closet." There was also a "carryall bag that had various feminine articles in it."

A search of Ms. Cate's possessions revealed two separate packets. One packet contained marijuana; and the second packet contained six "roaches", partially smoked marijuana cigarettes. Agent Lewis stated the combined weight of the contents of the two packets would not exceed ¼ of an ounce. Her purse contained a modest sum of money.

Ms. Cate advised the officers she was a resident of Knoxville, Tennessee, and provided the officers with a Knoxville address.

When a defendant challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Tenn.R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct as well as circumstantial evidence. *Farmer v. State,* 208 Tenn. 75, 343 S.W.2d 895, 897 (1961); *State v. Brown,* 551 S.W.2d 329, 331 (Tenn.1977).

In determining the sufficiency of the evidence we do not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973). Nor may we substitute our inferences for those drawn by the trier of fact in circumstantial evidence case. *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State,* 574 S.W.2d 49, 51 (Tenn. Crim.App.1978). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage,* supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage,* supra; *State v. Grace,* supra; *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). In *Grace,* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace,* supra, the accused has the burden of proving to this Court that the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* supra. This Court will not disturb a verdict of guilt on the facts unless the evidence contained in the record is insufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle,* supra.

We are of the opinion there is an abundance of evidence contained in the record from which a rational trier of fact can conclude that the appellants, Fred A. Cooper, Jr., and Wayne A. Cooper, are guilty of the felonious possession of marijuana with the intent to manufacture, deliver, or sell as well as the felonious possession of cocaine with the intent to manufacture, deliver or sell. Tenn.R.App.P. 13(e); *Jackson v. Virginia,* 437 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Tuggle,* supra.

■ With respect to Ms. Cate we are of the opinion a rational trier of fact would not be justified in finding her guilty of the felonious possession of marijuana and cocaine with the intent to manufacture, deliver or sell the substances beyond a reasonable doubt. In other words, the evidence contained in the record is legally insufficient to support her convictions. See *Jackson v. Virginia,* supra; *Davis v. State,* 577 S.W.2d 467 (Tenn.Crim.App.1979). However, we do find that there is an abundance of evidence from which a rational trier of fact can conclude that Ms. Cate is guilty of the lesser included offense of simple possession of marijuana. See T.C.A. §§ 39–6–417(a)(3) and (b).

As we view the evidence, Ms. Cate was a guest in the Coopers' home when it was raided by law enforcement officers. The only possessions were "a couple of blouses" hanging on the closet door in the back bedroom, and a "carryall" bag containing items a woman would be expected to take with her when temporarily away from home. The record does not reflect how long Ms. Cate had been on the premises, how long she intended to stay on the premises, and what, if any, special relationship she might have had with either of the Coopers.

Before a defendant may be convicted of possessing a controlled substance with the intent to manufacture, distribute or sell, the State must prove beyond a reasonable doubt the substance was a "controlled substance" and the defendant possessed the substance with the intent to manufacture, deliver or sell the substance. T.C.A. § 39–6–417(a). In the case *sub judice* the State established that marijuana and cocaine were controlled substances, but the State

failed to establish Ms. Cate possessed the substances, an essential element of both crimes. Except for the small amount of marijuana found in her purse and carryall bag the record is void of any evidence establishing her possession or interest in the marijuana and cocaine seized.

■ The term "possession," as used in the statute, embraces both actual and constructive possession. See *State v. Williams*, 623 S.W.2d 121, 125 (Tenn.Crim. App.1981); *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn.Crim.App.1984). Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over ... [the drugs] either directly or through others." *State v. Williams*, supra, quoting from *United States v. Craig*, 522 F.2d 29 (6th Cir.1975). See *United States v. Holland*, 445 F.2d 701, 703 (D.C.Cir.1971). In other words, "constructive possession is the ability to reduce an object to actual possession." *State v. Williams*, supra, quoting from *United States v. Martinez*, 588 F.2d 495 (5th Cir.1979). See *Harris v. Blackburn*, 646 S.W.2d 904, 906 (5th Cir. 1981). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *Harris v. Blackburn*, 646 F.2d 904, 906 (5th Cir. 1981). See *Dishman v. State*, 460 S.W.2d 855, 858 (Tenn.Crim.App.1970); *Whited v. State*, 483 S.W.2d 594 (Tenn.Crim.App. 1972). Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs. *Harris v. Blackburn*, supra. See *Dishman v. State*, supra; *Whited v. State*, supra.

We recognize that a criminal offense may be established exclusively by circumstantial evidence. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958); *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim. App.1983). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford*, supra, 470 S.W.2d at 613. However, we are of the opinion the facts and circumstances contained in the record are not "so closely interwoven and connected that the finger of guilt is pointed unerringly at the defendant." *State v. Crawford*, supra, 470 S.W.2d at 613.

■ It has long been the rule in this State that a conviction for a criminal offense may not be based solely upon conjecture, guess, speculation, or a mere possibility. *Rucker v. State*, 174 Tenn. 569, 129 S.W.2d 208 (1939). And this Court is not permitted to "speculate upon the guilt of one charged with the commission of a criminal offense." *Clancy v. State*, 521 S.W.2d 780, 781 (Tenn.1975).

Our holding regarding the sufficiency of the evidence renders the issue concerning the denial of Ms. Cate's motions for judgment of acquittal made at the conclusion of the State's proof as well as the conclusion of all the proof moot as to the felonious possession of marijuana and cocaine. The trial judge properly denied the motions as they related to the simple possession of marijuana.

### DISMISSAL OF JURY VENIRE

■ While counsel for the Coopers explained the difference between "simple" possession and possession of drugs with the intent to manufacture, sell or deliver to the prospective jurors, and questioned them as to whether they would be able to apply this rule of law to the evidence adduced at the ensuing trial, defense counsel and the court engaged in a colloquy with one of the prospective jurors concerning his views on drugs and drug dealers.

The prospective juror stated "[w]hen are we, when are we going to start to think

about what's going to happen to us? Are we going to wait until they get our family, or son or our grandson, about it? Are we going to wait on that to worry about the drugs?" The prospective juror never expressed a view as to the defendant's guilt or innocence. He consistently stated "I haven't heard the evidence." He stated that he felt he could listen to the evidence and determine the defendants' guilt or innocence based on the evidence. He stated he would not let his views interfere with his decision.

Counsel for Ms. Cate then commenced an examination of the prospective juror. Counsel alluded to the recent deaths of two professional athletes, who had died as a result of an overdose of cocaine. The prospective juror told him the deaths of these two men had no effect on him whatsoever. He advised counsel that it never bothers a person until it happens to a friend or a family member. As the court excused the prospective juror he stated: "I just hope we all don't wait till it gets too late."

Defense counsel moved the court to dismiss the entire jury venire. Counsel espoused the view that the statements made by the prospective juror had tainted the entire jury panel, all of whom were present in the courtroom when the statements were made. The trial judge took the motion under advisement, and advised counsel he would question the prospective jurors and determine whether or not they had been prejudiced.

After the jury was accepted by all of the parties, the trial judge questioned the jurors as to whether they could listen to the evidence presented in court and the instructions given by the trial judge, and apply the law to the facts in evidence. He also asked the jurors if they could base their decision solely on the facts and the law in this particular case. The court further asked if there was anything that would keep any of them from giving the defendants a fair and impartial trial. There was no response to any of the questions propounded to the prospective jurors by the trial judge. The trial judge then denied the motion to dismiss the venire.

We are of the opinion the defendants received a fair trial, and that none of the jurors accepted by the parties was in any way prejudiced by the statements made during voir dire examination. See *Layman v. State*, 1 Tenn.Crim.App. 83, 429 S.W.2d 832 (1968); *Graves v. State*, 489 S.W.2d 74, 81 (Tenn.Crim.App.1972). In *Layman* a prospective juror stated that "he could not say the man was innocent when he had already formed an opinion on the case" in the presence of jurors previously selected. Defense counsel immediately moved the trial court for the entry of a mistrial. In ruling the trial court did not commit error in denying the motion for mistrial, this Court said: "His statements and opinion were rumor as far as the other jurors were concerned and could not have been prejudicial to the other jurors, especially when the trial judge dismissed him when his bias was apparent. There was no error in refusing to declare a mistrial for this reason." 429 S.W.2d at 836. In *Graves* a prospective juror admitted he had a preconceived opinion as to the guilt of the defendant in the presence of the other prospective jurors. In ruling the defendant was not entitled to a mistrial this Court said:

> One of the purposes of voir dire is to qualify the members of the prospective jury as unbiased and open-minded. The fact that one or more jurors may have formed an opinion as to the guilt or innocence and expresses that opinion while being interrogated in the presence of other prospective jurors would not disqualify the other jurors unless it appears that the expression so influenced them that they shared the preconceived opinion. 489 S.W.2d at 74.

We do not find that the expressions of the prospective juror influenced the remaining prospective jurors or that they shared his preconceived opinions. As is stated in *Graves*: "All of the jurors who served on this case were, it is assumed in the absence of proof to the contrary, impartial and qualified." 489 S.W.2d 74.

This issue is without merit.

## THE MOTION TO SUPPRESS

The defendants Fred A. Cooper, Jr., and Wayne A. Cooper contend the trial court committed error of prejudicial dimensions in denying their motion to suppress the evidence seized from their premises. They argue that Agent David Lewis, who made application for the issuance of the search warrant, made an intentional or reckless misstatement of a material fact in his affidavit; and, when this statement is deleted from the affidavit, the affidavit fails to state probable cause for the issuance of a search warrant. The State contends the warrant is valid. Unfortunately, we are unable to resolve this issue on the merits because the search warrant and the affidavit given in support of the search warrant were never introduced into evidence. However, they have been included in what was formerly referred to as the "technical record." An examination of the documents reveals no indicia that they were made an exhibit at the suppression hearing or the trial; and they have not been authenticated by the trial judge.

■ Before an exhibit may be considered by this Court, it must have been (a) received into evidence, (b) marked by the trial judge, clerk or court reporter as having been received into evidence as an exhibit, (c) authenticated by the trial judge, and (d) included in the transcript of the evidence transmitted to this Court. Tenn.R. App.P. 24(f); *Krause v. Taylor*, 583 S.W.2d 603, 605–606 (Tenn.1979); *State v. Melson*, 638 S.W.2d 342, 351 (Tenn.1982), cert. den. 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); *State v. Williams*, 638 S.W.2d 417, 421 (Tenn.Crim.App.1982); *State v. Brock*, 678 S.W.2d 486, 489 (Tenn.Crim.App.1984).

The inclusion of a document in what has been commonly referred to as the "technical record" will not, as a matter of law, permit this Court to consider the document when it has not been introduced as evidence or authenticated by the trial court. See *Krause v. Taylor*, supra; *State v. Brock*, supra. While Rule 24, Tenn.R. App.P., abolished the distinction between what was formerly referred to as the "bill of exception" and the "technical record,"

creating what is now called the "record on appeal," it did not abolish the previous rule governing exhibits. See *State v. Melson*, supra.

■ When the record is incomplete, and does not contain the proceedings and documents relevant to an issue, this Court is precluded from considering the issue. See *State v. Melson*, supra [search warrant]; *State v. Hoosier*, 631 S.W.2d 474, 476 (Tenn.Crim.App.1982), [transcript of hearing on a pre-trial motion]; *State v. Morton*, 639 S.W.2d 666, 668 (Tenn.Crim. App.1982), [transcript of hearing on a pre-trial motion]; *State v. Griffith*, 649 S.W.2d 9, 10 (Tenn.Crim.App.1982), [pre-trial motions]; *State v. Hooper*, 695 S.W.2d 530, 537 (Tenn.Crim.App.1985), [transcript of hearing on pre-trial motions]. We must conclusively presume the ruling of the trial court was correct. See *State v. Jones*, 623 S.W.2d 129, 131 (Tenn.Crim.App.1981); *State v. Baron*, 659 S.W.2d 811, 815 (Tenn. Crim.App.1983); *State v. Taylor*, 669 S.W.2d 694, 699 (Tenn.Crim.App.1983).

This issue is without merit.

## DISCOVERY OF AUDIO TAPES

■ During the course of the investigation into the Coopers' drug trafficking T.B.I. agents sent informants to the Coopers' house trailer for the purpose of purchasing marijiuana. On each occasion the informant had been "wired" for sound, and recordings were made of the conversations between the informant and apparently Wayne Cooper.

When this issue was raised in the trial court, the assistant district attorney general advised the trial judge that the contents of the audio recordings were not exculpatory to the defendants, and the State of Tennessee did not intend to use the recordings as part of its case in chief. The trial court agreed to review the tapes prior to trial.

On the morning of trial the court advised counsel it had listened to the tapes and the tapes did not contain anything exculpatory. The court ruled the defendants were not entitled to inspect or listen to the tapes.

The question of discovery in this instance is governed by Rule 16(a)(1)(C), Tenn.R. Crim.P. This rule provides:

Upon request of the defendant, the State shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the State, and which are material to the preparation of his defense or are intended for use by the State as evidence in chief at the trial, or were obtained from or belonged to the defendant.

While the tapes were in the possession of the State, the tapes did not contain evidence which "was material to ... [the defendants'] preparation" and the State declared prior to trial the tapes were not "intended for use by the State as evidence in chief at the trial." Therefore, the defendants were not entitled to discover the tapes.

We have examined the record and find that these tapes were not made a part of the record transmitted to this Court. Therefore, we must conclusively presume that the finding of the trial court to the effect the tapes do not contain exculpatory evidence was correct. See *State v. Jones,* supra; *State v. Baron,* supra; *State v. Taylor,* supra.

### TESTIMONY OF TOXICOLOGIST

The defendants, Fred A. Cooper, Jr., and Wayne A. Cooper, contend it was error of prejudicial dimensions to permit the toxicologist to testify as to the "usual purity" of cocaine tested at the laboratory. We disagree.

The toxicologist tested the five packets of white powder found in the leather jacket of Fred A. Cooper, Jr., and determined the powder contained 64.9% of cocaine. The toxicologist also examined the white powder found in the closet of the front bedroom, and the powder contained 75.3% of cocaine.

The toxicologist was permitted to testify over the objection of counsel the average street purity of cocaine is between 5% and 30%. The toxicologist testified she had been employed as a toxicologist for approximately six and one-half years, and she has examined an average of 15 to 30 samples of cocaine each month.

We are of the opinion this evidence was relevant on the issue of whether the Coopers possessed the cocaine for personal use or for the manufacture, distribution or resale of the substance. See *State v. Banks,* 564 S.W.2d 947, 949 (Tenn.1978). The fact there was a high percentage of cocaine contained in the powder seized is a factor which the jury was permitted to consider in determining this issue.

This issue is without merit.

### MISSTATEMENT OF EVIDENCE DURING FINAL SUMMATION

Ms. Cate contends the assistant district attorney general argued matters not in evidence when responding to defense counsel's argument that the cocaine was possessed for the personal use of Fred and Wayne Cooper.

In view of the disposition made with respect to the charge of felonious possession of cocaine with the intent to manfuacture, deliver or sell this issue is now moot.

The judgments of the trial court as to the defendants, Fred A. Cooper, Jr., and Wayne A. Cooper, are affirmed.

The judgment of the trial court finding the defendant, Deirdre E. Cate, guilty of the offense of possession of cocaine with the intent to manufacture, deliver or sell is reversed and dismissed.

The judgment of the trial court finding the defendant Cate guilty of possession of marijuana with the intent to manufacture, deliver or sell is reduced to the simple possession of marijuana; and this cause is remanded to the trial court for the imposition of a proper sentence in this cause.

WALKER, P.J, and ALLEN R. CORNELIUS, Jr., Special Judge, concur.